UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**MEMORANDUM IN SUPPORT OF DEFENDANT PETER DAVIS'S
MOTION FOR A BILL OF PARTICULARS AND TO COMPEL DISCOVERY**

Pursuant to Fed. R. Crim. P. 7(f) and Local Rule 116.3, defendant Peter Davis submits this memorandum in support of his motion for a bill of particulars and to compel discovery.

The bulk of the crimes and racketeering predicates in this Indictment are based on the core allegation that things of value were given to Springfield Housing Authority ("SHA") officials in exchange for "rewards" and other "preferential treatment" in connection with the officials' awarding of contracts and other benefits. By this motion, Mr. Davis seeks two categories of discovery: First, he seeks a bill of particulars that identifies the contracts he bid on and any benefits he received from SHA officials. *See, e.g., United States v. Espy*, 998 F. Supp. 17, 34 (D.D.C. 1997) (ordering government to provide particulars regarding "the basis of the government's allegations that the defendant solicited and received things of value for and because of official acts performed and to be performed by defendant Espy"). Second, he seeks an order requiring the government to comply with Fed. R. Crim. P. 16 by making meaningful disclosure, as the Rule requires, of materials it intends to use in its case-in-chief at trial and that are material to the defense. *See, e.g., United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (open file discovery does not eliminate the need for Rule 16 compliance).

**BACKGROUND**

The 148-page Indictment in this matter charges thirteen different defendants with substantive violations of nine different criminal statutes, as well as conspiracy to commit violations of four of those statutes. The charges include an alleged racketeering enterprise (the SHA) and conspiracy that lasted over fifteen years and involved 248 predicate racketeering acts, thirteen defendants, twenty-nine unindicted co-conspirators, and dozens (if not more) of separate, document-intensive commercial transactions. Indictment ¶¶ 21-35. At the heart of the Indictment is the allegation that defendants Raymond Asselin, Sr. and Arthur G. Sotirion operated the SHA as a racketeering enterprise, "rewarding those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by using their positions within SHA to award contracts, steer sub-contracts, purchase[] goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses." Indictment ¶ 23.

Defendant Peter Davis is a 71-year-old retired contractor. His last dealings with the SHA were in 1997. Most of his business records were irretrievably damaged in connection with a 1998 move from the Springfield area to Eastern Massachusetts. He is one of the defendants alleged to have been rewarded "with contracts, sub-contracts, change orders, purchase orders, preferential treatment, and other SHA resources," in exchange for "the payment of bribes, kickbacks, gratuities, and other things of value," based on checks written in 1996 and 1997. Indictment at ¶¶ 29, 40. Mr. Davis is charged in four of the Indictment's 122 counts: racketeering in violation of 18 U.S.C. § 1962(c) (Count 1); racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to violate the bribery/gratuity statute, 18 U.S.C. § 201 (Count 3); and obstruction of justice in violation of 18 U.S.C. § 1503 (Count 107).

Although all of the charges against him are rooted in allegations that he received "rewards" from the SHA, the Indictment does not state what rewards he received or what SHA contracts he bid on.

The government has attempted to discharge its discovery obligations under Fed. R. Crim. P. 16 and Local Rule 116.1 by what it describes as "open file discovery" — that is, by making available the voluminous files of its investigation. Its files include approximately—if not more than—250 boxes, bags and even a basket of documents; approximately fifteen large filing cabinet drawers filled with documents; and over twenty tapes of hard drives and twenty-five computers containing an unknown amount of information and/or documents. Although some portion of the materials have been indexed, the indices are so general as to be wholly unhelpful. In addition, the government has made available two CDs containing board minutes and accounts payable information from the Springfield Housing Authority ("SHA"), as well as selected grand jury transcripts and exhibits. While such an "open file" discovery policy may be laudable in other contexts, here it makes it virtually impossible for Mr. Davis to engage in any meaningful evaluation of the government's case against him.[1]

Accordingly, on January 5, 2005 and again on June 1, 2005, counsel for Mr. Davis made written requests of the government for discovery pursuant to Local Rule 116.3(A).[2] The letter

---

[1] Although the government describes its discovery policy as "open file," the term is technically inaccurate, inasmuch as the government has not made all witness interview memoranda and grand jury transcripts available.

[2] On January 5, 2005, counsel for Mr. Davis sent the government a letter requesting that it identify certain of the discovery that is relevant to Mr. Davis and the charges against him. *See* 1/5/2005 Letter from Mr. Rehnquist to Mr. Welch (attached to Declaration of James C. Rehnquist as Exhibit 1). Because of the superseding Indictment filed on January 11, 2005, the government did not respond to the January 5, 2005 letter. On June 1, 2005, counsel for Mr. Davis sent a second letter to the government requesting additional narrowing of the discovery. *See* 6/1/2005 Letter from Mr. Rehnquist to Mr. Welch (attached to Declaration of James C. Rehnquist as Exhibit 2). The government responded on June 15, 2005 (by letter received by Mr. Davis's counsel on June 17, 2005), referring defendant Davis to the "open file" discovery generally, and for the relevant bidding and contract information, to approximately 100 of those boxes. *See* 6/15/2005 Letter from Mr. Welch to Mr. Rehnquist ("Generally, any and all contracts and/or subcontracts that P.J. Richfield and/or

3

requests were fruitless, and Mr. Davis therefore files this motion, seeking two forms of relief. First, Mr. Davis seeks a bill of particulars identifying (a) all contracts and/or subcontracts for which a bid was submitted by or on behalf of Mr. Davis to the SHA; and (b) all actions allegedly taken by the SHA as a result of Mr. Davis's allegedly giving, offering, and/or promising something of value. Second, Mr. Davis seeks an order requiring the government to comply with Fed. R. Crim. P. 16(a)(1)(E), which requires the disclosure of documents or things "within the government's possession, custody, or control" that are either "material to preparing the defense" or which "the government intends to use [] in its case-in-chief at trial."

## ARGUMENT

**I. THE GOVERNMENT SHOULD BE ORDERED TO FILE A BILL OF PARTICULARS.**

The purpose of a bill of particulars is to provide a criminal defendant with information necessary to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy. *United States v. Abreu*, 952 F.2d 1458, 1469 (1st Cir. 1992). Trial courts enjoy broad discretion under Fed. R. Crim. P. 7(f) in ruling upon requests for bills of particulars, *Will v. United States*, 389 U.S. 90, 98-99 (1967), although "where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request for a bill of particulars may constitute reversible error," *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985) (internal citations omitted). Protecting a defendant from undue labor in preparing his defense is a well-recognized basis for a bill of particulars. *See, e.g., United States v. Pack*, 20 F.R.D. 209, 212 (D. Del. 1957) ("The purpose of bills of particulars is to prevent surprise and to save the defendant from undue labor in the

---

Peter Davis received are located in the boxes labeled SHA contracts, the boxes seized from Sotirion's office, and the boxes of documents subpoenaed from P.J. Richfield, Inc., Manny's Plumbing & Heating, and G&R Associates.") (attached to Declaration of James C. Rehnquist as Exhibit 3).

4

preparation of his case.").³  Rule 7(f) was amended in 1966 to "encourage a more liberal attitude by the courts toward bills of particulars." Fed. R. Crim. P. Rule 7 advisory committee's notes.

The particulars Mr. Davis seeks here relate directly to the requisite elements of the charges against Mr. Davis.  The elements of 18 U.S.C. § 201, which forms the basis for the substantive charges (including RICO predicate acts), are as follows: "a showing that something of value was corruptly given, offered, or promised to a public official (as to the giver) or corruptly demanded, sought, received, accepted, or agreed to be received or accepted by a public official (as to the recipient) with intent, *inter alia*, to influence any official act (giver) or in return for being influenced in the performance of any official act (recipient)." *United States v. Sun-Diamond Growers*, 526 U.S. 398, 404 (1999) (internal citations omitted).  The particulars Mr. Davis seeks—identification of contracts he bid on and benefits he received—could not be more integral to the charges against him, and the Indictment is wholly silent on the subject.  Although the Indictment alleges that Mr. Davis induced defendants Sotirion and Raymond Asselin, Sr. to "fraudulently generate bid proposals, collude in the preparation of bid proposals, award contracts, steer sub-contracts and otherwise provide preferential treatment during the terms of contracts to Peter Davis, d/b/a P.J. Richfield, Inc.," Indictment ¶ 40, it nowhere identifies what contracts Mr. Davis bid on (tainted or otherwise) or any "preferential treatment" or "rewards" he received.

---

³ As another federal court has explained: "Indeed, in my view, the function of [a bill of particulars] is even broader: *I think it may be invoked to save a defendant wholly needless labor in preparing his defense*. Thus, if the case is such that the government relies for its proof of fraud solely upon one or more specific entries in the defendant's returns, it may properly be required to identify those entries so that the defendant in his preparation for trial may be in readiness to submit all possible evidence which he thinks will negate a showing of fraud founded on those entries, without expending the labor which would be necessary to present evidence as to entries which the government will not challenge." *United States v. Dolan*, 113 F. Supp. 757, 759 (D. Conn. 1953) (emphasis added).

As several courts have recognized in analogous contexts, such information is essential to the preparation of a defense. *See, e.g., United States v. Johnson*, 21 F. Supp. 2d 329, 340 (S.D.N.Y. 1998) (stating that "the defendants are entitled to know the names of the individual corporations that were the alleged victims of the extortions, and the construction sites or projects related to the alleged extortions. The government is ordered to provide a bill of particulars regarding these two issues."); *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (granting in part a motion for a bill of particulars, "as it relates to the defendant's request for the basis of the government's allegations that the defendant solicited and received things of value for and because of *official acts* performed and to be performed by defendant Espy.") (emphasis in original) (internal citations omitted); *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (in case charging crimes under Federal Election Campaign Act, although indictment alleged generally that the defendant had received benefits from the Democratic National Committee as a result of his fraudulent contributions, it was only fair that the government more specifically lay out exactly what benefits ran to the defendant as a result of his alleged activity);[4] *United States v. Aliperti*, 867 F. Supp. 142, 149 (E.D.N.Y. 1994) (in prosecution under 18 U.S.C. § 1951 for

---

[4]  The *Trie* court stated that, even though the indictment specified some of the benefits defendant received, such as:

> special seating at DNC functions, complimentary tickets to DNC events, membership in DNC committees and related entities…, invitations to meetings and other events where White House personnel [] were in attendance, and administrative support of DNC employees..., [p]rosecution of the scheme logically requires demonstrating that the property allegedly obtained by [defendant] was provided in return for the fraudulent contributions that he allegedly made to the DNC. A potential avenue of defense therefore would be to show that some or all of the property that was allegedly fraudulently obtained by [defendant] was in fact legitimately obtained. Preparation of such a defense requires that [defendant] know sufficiently specific information concerning the property allegedly obtained to adequately identify it, so that he can demonstrate either that he never obtained it or that he obtained it legitimately and not as a result of fraudulent contributions.

*Id.* at 22.

extortion "under color of official right," government required to specify actual favors granted by public officials, so that defendant can "adequately prepare a defense and [] avoid unfair surprise at trial"). The Indictment is silent as to this critical information, and the government should be ordered to provide particulars.

The government resists any particularization of its charges by hoisting the flag of "open file discovery." *See* 6/15/2005 Letter from Mr. Welch to Mr. Rehnquist (attached to Declaration of James C. Rehnquist as Exhibit 3). But the cases the government cites to support its stance do not stand for the proposition that "open file" discovery obviates any need for a bill of particulars. The government relies on *United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993), a drug case that presumably did not contain the sort of voluminous discovery at issue here, which holds only that a bill of particulars should be granted in certain circumstances (*e.g.*, if without it the defendant will be "disabled from preparing a defense"), *even when open-file discovery is provided*. *Id.* at 1192-93. The *Sepulveda* court merely found a request for a bill of particulars regarding the date, time, and place of defendant's criminal activity unwarranted in the particular case before it. *Id.*

In contrast, many courts have explicitly held that "open file" or otherwise voluminous discovery disclosures do <u>not</u> eliminate a defendant's need for a particularization of the indictment's charges. *See United States v. Bortnovsky*, 820 F.2d 572, 573-75 (2d Cir. 1987) (finding abuse of discretion and reversing conviction where district court denied bill of particulars' request to identify allegedly fraudulent documents, and stating: "The Government did not fulfill its obligation merely by providing *mountains of documents* to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.") (emphasis added); *United States v. Upton*, 856

7

F. Supp. 727, 753 (E.D.N.Y. 1994) (holding that government must *specifically* identify allegedly false documents "buried in thousands of documents already produced"). Indeed, some of the courts have held that "the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Lino*, No. 00 CR 532, 2001 WL 8356, at *4 (S.D.N.Y. Dec. 29, 2000) (internal citations omitted). *See also Trie*, 21 F. Supp. 2d at 21 n.12 ("open file discovery…is no substitute for adequate specification of the crimes with which he is charged."); *United States v. Biaggi*, 675 F. Supp. 790, 809 (S.D.N.Y. 1987) ("the Government may not simply deluge defendants with thousands of documents when more specific guidance is necessary to their understanding of the charges and preparation for trial"); *id.* at 810 ("defendants may not be compelled to wade through thousands of documents in an effort to locate materials essential to their defense"). In fact, the *Lino* court even noted that this is "particularly true in cases charging criminal offenses under RICO, where 'with the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope.'" *Lino*, 2001 WL 8356, at *4 (citation omitted).

Like the defendants in these cases, Mr. Davis should not have to waste precious time and resources guessing which bids and contracts and related actions he must defend against, and wading through hundreds of thousands of pages of documents. This Court should order the government to file a bill of particulars that precisely identifies its allegations as to the contracts he bid on and the benefits he received.

## II.  THE GOVERNMENT SHOULD BE ORDERED TO COMPLY WITH RULE 16.

Rule 16(a)(1)(E) provides in relevant part, "the government must permit the defendant to inspect and to copy…items…within the government's possession, custody, or control," where

8

"(i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial." The government here has attempted to comply with Rule 16 simply by providing defendants with the modified "open file discovery" discussed above. More is required under Rule 16. As the First Circuit has stated,

> Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir. 1995). It is neither fair nor efficient for the government to fail to make timely and reasonable disclosure of the evidence it plans to use at trial and information that may be material to the defense. It is not fair to require a defendant to exhaust his limited resources attempting to digest the entirety of the government's files, simply because the government wishes to defer making the effort to identify the tiny percentage of that material that it will actually use at trial, or which is material to the defense.

Although there is no authority directly on point in the First Circuit, several courts have held that "open file" discovery does not necessarily satisfy Rule 16. *See, e.g., Upton*, 856 F. Supp. at 747-49 (government must "provide defendants with adequate notice of the allegedly falsified documents upon which it plans to rely at trial in order to allow them to adequately prepare their defense"); *United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (Rule 16 requires the government to do "more than [] identify several thousand pages, any of which it 'may' rely on at trial"; such a "broad brush approach" is insufficient); *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (ordering government to identify within fourteen days which of the 25,000 documents it planned to use in its case-in-chief, rather than allowing government to "bury[] the defendant in paper" with open file discovery). Each of these

9

courts has held, moreover, that Rule 16 requires the government to disclose not only those documents it intends to offer in evidence but also all documents on which a witness will rely or to which he will refer. *Upton*, 856 F. Supp. at 747 (citing *United States v. Countryside Farms, Inc.*, 428 F. Supp. 1150, 1154 (D. Utah 1977); *Poindexter*, 727 F. Supp. at 1484 (same); *Turkish*, 458 F. Supp. at 882 (same).[5]

Here, the case for ordering compliance with Rule 16 is even stronger than in *Upton*, *Poindexter*, and *Turkish*. First, the volume of open file discovery here is significantly larger than in those cases.[6] Second, because of the breadth and age of the alleged conspiracy here—the racketeering acts Mr. Davis is charged with all took place in 1996 or 1997, for example—the defendants are more dependent than in many cases on the government's faithful discharge of its Rule 16 obligations.[7] RICO affords the government considerable prosecutorial advantages, not the least of which are a generous statute of limitations and an abundance of predicate crimes to charge. But these advantages should heighten, not diminish, the government's responsibility to discharge its discovery obligations.

---

[5] This court's denial of a discovery motion purportedly based on Rule 16 in *United States v. Labovitz*, CR No. 95-30011-MAP, 1997 U.S. Dist. LEXIS 7541 (D. Mass. May 30, 1997), is not inconsistent with these cases. Among other distinguishing features, much of the discovery sought in *Labovitz* was not in the possession of the government. *Id.* at *6-7.

[6] A standard banker's box holds approximately 2,500 pages. Thus, the government here has likely made available at least 750,000 pages of documents, not to mention untold volumes of information in electronic form. By comparison, in *Poindexter*, the government produced approximately 300,000 pages of documents, *see* 727 F. Supp. at 1472, and in *Turkish*, just 25,000, *see* 458 F. Supp. at 882. The *Upton* court referred merely to "thousands of pieces of paper." 856 F. Supp. at 747.

[7] Mr. Davis does not mean to suggest that the government must identify the evidence it intends to use with the precision and finality of an exhibit list, which the Local Rules normally do not require the government to provide until a week before trial. *See* L.R. 117.1(A)(8)(b). But the plain command of Rule 16 cannot be ignored by the government, either. The Rule must mean, at a minimum, that the government must make a good faith effort to determine what evidence it actually intends to use at trial, and to segregate that evidence from other information in its possession and disclose it to Mr. Davis. *See Poindexter*, 727 F. Supp. at 1484 ("While the government's case or strategy may change in advance of trial or even during trial, there is no reason why it cannot be more specific as to which documents it currently intends to use, and there are many reasons, grounded in fairness to the defendant, the protection of his rights, and not least Rule 16(a)(1)(C), why it should be.").

For all these reasons, defendant Peter Davis respectfully asks that this Court order the government to comply with its Rule 16 obligations.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court order the government to file a bill of particulars and comply with Fed. R. Crim. P. 16 as requested above.

Respectfully submitted,

PETER DAVIS

By his attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
Elizabeth K. Train (BBO # 650682)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: June 30, 2005

## LOCAL RULES CERTIFICATION

I, James C. Rehnquist, hereby certify that, pursuant to Local Rules 7.1 and 116.3, counsel for defendant Peter Davis conferred with counsel for the United States in a good-faith attempt to resolve or narrow the issues presented by this motion.

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)

## CERTIFICATE OF SERVICE

I, James C. Rehnquist, counsel for defendant, hereby certify that a copy of the foregoing document has been served on counsel of record by first class mail, postage prepaid, on this 30th day of June, 2005.

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)

LIBA/1559255.4