UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 04-300 -33-MAP |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| RAYMAOND ASSELIN, | ) | |
| Defendant | ) | |

**DEFENDANT RAYMOND ASSELIN, SR.'S SENTENCING MEMO**

In accordance with this Court's Procedural Order on Sentencing, Defendant Raymond Asselin, Sr. sets fort the following considerations relevant to this Court's sentencing decision.

**I.     The Sentencing Scheme**

In the post-Booker world of sentencing, the United States Sentencing Guidelines ("Guidelines") "are merely advisory, which means that a district court has considerable leeway to impose a sentence that falls outside of the range suggested by the guidelines." *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005). Now, courts are free "to impose non-guidelines sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." *United States v. Jiminez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006)(en banc).

In fashioning an appropriate sentence for Mr. Asselin, this Court should first look to the Guidelines. *Id.* (explaining that Guidelines "continue to be an important consideration in sentencing that should be addressed in the first instance by the sentencing judge.") At this stage, this Court must resolve any factual or legal disputes necessary to calculating the Guidelines. *Id.* However, this is merely "the starting point" of this Court's sentencing analysis and Mr. Asselin "is free to adduce reasons and facts to

support" his request for a below-Guidelines sentence. *United States v. Saez*, 444 F.3d 15, 17 (1st Cir. 2006).

Next, this Court must consider "the sentencing factors set out in 18 U.S.C. § 3553(a), along with any other relevant considerations." *United States v. Dixon*, 449 F.3d 194, 204 (1st Cir. 2006). At this stage, this Court may consider factors that were previously discouraged or forbidden under the mandatory Guidelines. *See United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006). For example, this Court may now consider Mr. Asselin's age, health, and his family ties.

Finally, this Court must consider whether the § 3553(a) factors weigh in favor of a sentence below that contemplated by the Guidelines. *See United States v. Wallace*, 461 F.3d 15, 32 (1st Cir. 2006). "The goal is to fashion `a sentence sufficient, but not greater than necessary' for the achievement of the legitimate objectives of sentencing." *Dixon*, 449 F.3d at 203, *citing* 18 U.S.C. § 3553(a). To justify a below-Guidelines sentence, Mr. Asselin need not show that his case is "extraordinary." *United States v. Rivera*, 448 F.3d 82, 85 (1st Cir. 2006). Indeed, this Court "is not bound to impose a sentence within the range the Guidelines recommend, of course, and may depart from it if it reasonably concludes that the other § 3553 factors warrant such a departure." *Robinson*, 433 F.3d at 35.

    **II.    In Calculating the Guidelines Sentencing Range, This Court Should Not Apply the Abuse of Trust Adjustment.**

In calculating the Guidelines for Mr. Asselin's RICO conviction, the PSR recommends that the Court apply a two-level adjustment for abuse of trust pursuant to U.S.S.G. § 3B1.3. Application of that adjustment, however, is erroneous.

Because Counts 1 and 2 are RICO counts, as the PSR correctly states, U.S.S.G. § 2E1.1 applies. Section 2E1.1(a) provides that the base offense level is the greater of a base offense level of 19, or the offense level applicable to the underlying racketeering acts. Here, the underlying racketeering acts are bribery, thus U.S.S.G. § 2C1.1 – which leads to a base offense level of higher than 19 and thus controls -- applies.

As the Background explains, § 2C1.1 "applies to a person who offers or gives a bribe for a corrupt purpose, such as inducing a public official to participate in a fraud or to influence his official actions, <u>or to a public official who solicits or accepts such a bribe</u>." (emphasis added). In other words, in calculating Mr. Asselin's offense level -- as the First Circuit has explained -- § 2C1.1 already takes into consideration that he was a public official and therefore, occupied a position of trust. *See, e.g., United States v. Butt*, 955 F.2d 77, 89 (1st Cir. 1992)("The base offense level prescribed by the guidelines for a particular crime presumably reflects, or includes, those characteristics considered by Congress to inhere in the crime at issue. In the case of extortion under color of right [to which the same guideline at issue here applies], abuse of trust would be one such characteristic, since Congress could reasonably have determined that every act of extortion under color of right involves an abuse of public trust.").[1]

To avoid double counting this factor in sentencing, the adjustment under § 3B1.3 should not be applied.[2] Indeed, § 2C1.1, Application Note 3 states: "<u>Do not apply §</u>

---

[1] In *Butt*, the First Circuit did not have the occasion to explicitly address the issue present here because "[t]he parties agreed that abuse of public trust was an element of the offense of extortion under color of right, and that the § 3B1.3 adjustment should not be added to the base offense level of ten, under § 2E1.1(a)(2)." *Id.* at 88.

[2] Conversely, this adjustment would apply if Mr. Asselin's sentence was calculated under U.S.S.G. § 2E1.1(a)(1)(setting forth a base offense level of 19 for RICO offense)

3B1.3 (Abuse of Position of Trust or Use of Special Skill) ….." except in enumerated circumstances, none of which are found here. (emphasis added). Therefore, the adjustment cannot be applied. *See also* U.S.S.G. § 3B1.3 ("This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.")

### III. The Factors Under 18 U.S.C. § 3553(a) Weigh in Favor of Leniency.

*Booker* teaches that this Court also must now consider factors it could not have considered under the mandatory-Guidelines regime – specifically, those factors set forth in 18 U.S.C. § 3553(a). After considering these factors, as well as the Guidelines, this Court is free "to impose [a] non-guideline sentence[] that override the guidelines, subject only to the ultimate requirement of reasonableness." *Jimenez-Beltre, supra* at 518.

In accordance with 18 U.S.C. § 3553(a), this Court must consider other factors, such as Mr. Asselin's personal circumstances and history; whether he has a need for training or education; and the need for the sentence imposed, in light of the seriousness of the offenses, the need for deterrence considerations, concerns of recidivism, and the need to protect the public from Mr. Asselin. This Court is also free to consider other relevant factors, including those previously discouraged or even forbidden by the Guidelines.

#### A. Mr. Asselin's Age and Health

Mr. Asselin is 69 years old. Any sentence of incarceration that this Court may impose is, in effect, a death sentence. To be sure, as of 2004, the average life expectancy for a white male was 75.1 years. National Vital Statistics Reports, Vol. 53, No. 6, Nov. 10, 2004.

---

"[b]ecause the RICO statute…can be violated in innumerable ways" and the offense characteristic of abuse of trust is not necessarily inherent in a RICO violation. *See id.*

Moreover, Mr. Asselin is in rather poor health. In the past, he had prostate cancer, for which he now requires biannual checkups. Currently, he suffers from high blood pressure, cholesterol, and gastrointestinal problems, all related to the stress of this case. He also suffers from anxiety and depression, for which he takes Paxil. The stress of incarceration will, no doubt, exacerbate these conditions, further endangering his health.

B. **Mr. Asselin's Personal History**

Mr. Asselin attended Boston College, where he received a bachelor's of science degree. He went on to get his master's degree in social work, and was a licensed social worker until 2004, when his license lapsed. His involvement in social work inspired his daughter Maria, who writes, "My father was always someone I looked up to and in fact followed in his chosen career…. I would often call him for a consultation in my work with the Department of Social Services. His knowledge and experience gave me greater insights as to how to help the people I was working with." Exh. A.

In 1969, Mr. Asselin became the Executive Director of the Springfield Housing Authority (SHA), a position he held until he resigned in 2003. He was devoted to helping those who needed the services of the SHA. Mrs. Asselin writes: "In his professional field, he wanted only to help people. And he did just that. He quieted riots at Riverview, made living conditions so much cleaner and safer in the projects, gave the tenants so many improvements. I can attest to the fact that many called or wrote in appreciation. He loved the fact he could make their quality of life so much better." Exh. B.

Despite his crimes, over the years, Mr. Asselin served the SHA with distinction. As the PSR indicates, Mr. Asselin, and the SHA under his direction, received awards

from the Department of Housing and Urban Development ("HUD").[3]  PSR, Para. 32.  In 1985, HUD awarded the SHA for its performance in maintenance and housing services, and it was the runner-up for outstanding overall management accomplishments.  Exh. C.  In 1994, the SHA received the HUD Sustained Performance Award for its excellence in running a federally funded housing project.  *Id.*  In 1995, HUD awarded the SHA a Certificate of Special Achievement "[i]n recognition of [its] dedicated efforts in the fight against drugs in public housing," recognizing that SHA's "continued commitment to the campaign against drugs will enrich the quality of life for the residents of public housing." *Id.*  In 1996, the SHA awarded a Certificate of Appreciation to Mr. Asselin, "in recognition of his many years of meritorious service, professional achievements, dedicated efforts and leadership to the Springfield Housing Authority in making it one of the top performing authorities in the country."  *Id.*

In the late 1970's, Mr. Asselin was a founding member of the National Association of Housing and Redevelopment Officials ("NAHRO").  In 1978 and 1979, he was president of NAHRO.  As John Barone writes, "As President, Mr. Asselin worked tirelessly to promote adequate housing for low-income families.  His efforts and accomplishments earned him national attention."  Exh. D.  In 2001, NAHRO recognized Mr. Asselin for his "Dedicated Service to the Housing and Community Development and to NAHRO as a Member of the 1999-2001 Board of Governors."  Exh.  C.   NAHRO also recognized Mr. Asselin for being a member of its Board of Credentialing Trustees from 1997 to 1999.  *Id.*

---

[3] The PSR alleges that these awards were based in part upon records that Mr. Asselin and/or Mr. Sotirion instructed employees to falsify.  As stated in his objections to the PSR, Mr. Asselin denies that he ever instructed an SHA employee to falsify records upon which HUD graded the SHA's performance.

### C.  Mr. Asselin's Family Life

The Asselin family is large, and by all accounts, close-knit.  Mr. Asselin met his wife while a college student and they have been married for 48 years, living in Springfield.  Mrs. Asselin writes, "Raymond Asselin, today, as you know him your Honor, is not the same Raymond Asselin I know and have known for the past 50 or so years.  He is kind, generous, compassionate, helpful, totally loyal, devoted – a good Samaritan….I was attracted to him for his easiness with people, his humor, a glowing desire to help others…." Exh. B.

Together, the Asselins raised five children:  James (age 47), Raymond, Jr. (age 45), Joseph (age 43), Maria (age 41), and Christopher (age 37). With the exception of Ray, Jr., who did not attend college, the Asselins helped each of their children obtain degrees, and some went on to complete master's programs.

Mr. Asselin is close to all his children and grandchildren, all of whom live in Springfield or the surrounding towns.  James has 3 children:  Timothy and Elizabeth, who are twins and age 20, and James Jr., who is 14.  James' family lives close by in Springfield.  Joseph has four children:  Joseph, Jr., age 17, Patrick, age 16, Cassandra, age 13, and Daniel, age 12.  Joseph's family lives in Amherst.  Maria – a widow and single mother – has two children, Alexander, age 17 and Nicholas, age 12.  They live in Ludlow.  Christopher, who lives in Springfield, has twin daughters, Janet and Jacquelyn, age 5.  Mr. and Mrs. Asselin are frequent guests at their children's homes, and every Sunday, practically the whole family comes to the Asselin house, arriving for breakfast and staying through dinner.

Mrs. Asselin writes that "Ray is a wonderful father and best friend to his sons, Jim, Ray, Joe and Chris and his daughter, Maria. A fantastic grandfather (Papa) to his eleven grandchildren. Growing up he taught them much – pride, faith, compassion, and most of all, love." Exh. B. His daughter Maria writes of the support her father gave when she lost her husband: "My husband died 5 ½ years ago and it was then that I realized just how much love and support a parent could actually provide for their child. My life as well as my children's was shattered. My parents, both mother and father, was there for us in every way possible. Their commitment to us was unrelenting, based on pure and unconditional love, which continues to this day." Exh. C. Maria also writes of her father's bond with her children: "My children have grown to love their grandparents unconditionally, realizing their faults but also focusing on the gifts that they give them…. Nik 12 years of age adores his grandfather….My parents, their grandparents, have willingly filled the gap that my husband left behind. My children are aware of the grave issues and matters that are ever present in my family's life. This has been a difficult journey that they have traveled, willingly because of their deep love and commitment to their grandparents." *Id.*

Mr. Asselin was also involved in charity organizations. While at the SHA, he was in charge of the United Way campaign, responsible for organizing and collecting thousands of dollars in donations for many years. From 1995 to 2003, he was heavily involved in the North End Community Council, an organization devoted to inner-city youths. He used his skills as a social worker to counsel at-risk youth and also did things such as transporting them to activities at the Boys and Girls Clubs.

### D. The Need for the Sentence Imposed

In light of his age and education, Mr. Asselin does not need any training or education. Moreover, Mr. Asselin is not likely to recidivate and there is no need to protect the public from him.

### E. Other Adverse Consequences

By pleading guilty, Mr. Asselin faces far more than the prospect of going to prison. Indeed, he has had to endure seeing each one of his children face criminal charges, and seeing each of his sons sentenced. Joseph recently received six months in a halfway house and six months of home confinement. James received a sentence of thirty-six months, Raymond, Jr. a sentence of eighteen months, and Christopher a sentence of eighteen months. His daughter Maria's case is still pending. Moreover, Mr. Asselin is left with the knowledge that he is responsible for the fact that many of his grandchildren will face the next few years without the presence of their fathers. This has, in large part, contributed to the need for Mr. Asselin to seek psychiatric care and medication.

Pleading guilty has also had an enormous financial impact on Mr. Asselin and makes it nearly impossible for him to provide financial stability for his wife, who is seventy years old and, with the exception of the last few years, has never worked outside the home. Not only has he agreed to forfeit over three million dollars in assets, but he has also lost his pension, including his own contributions.

IV.     **CONCLUSION**

Defendant Raymond Asselin, Sr. respectfully requests that this Honorable Court consider the foregoing factors in deciding his sentence.

> Respectfully submitted,
> RAYMOND ASSELIN, SR.
> By his attorneys,
>
>
> /s/ Richard M. Egbert
> Richard M. Egbert (BBO No. 151800)
> Patricia A. DeJuneas (BBO No. 652997)
> Law Office of Richard Egbert, P.C.
> 99 Summer Street, Suite 1800
> Boston, MA 02110
> Tel: (617) 737.8222

**CERTIFICATE OF SERVICE**

I, Richard M. Egbert, hereby certify that I served the foregoing document upon William Welch, Esq., Assistant United States Attorney, Office of the United States Attorney, 1550 Main Street, Room 310, Springfield, Massachusetts 01103 by first class mail, postage prepaid, on this 20th day of February, 2007.

> /s/ Richard M. Egbert
> Richard M. Egbert, Esquire

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIM. NO. 04-300 -33-MAP** |
| | ) | |
| vs. | ) | |
| | ) | |
| **RAYMOND ASSELIN, SR., et al.** | ) | |
| | ) | |

_____

**EXHIBITS A-D TO THE SENTENCING MEMORANDUM HAVE**

**BEEN FILED WITH THE CLERK'S OFFICE ON PAPER**